In Re: Appeal of Chief
Floyd NEVLING.

Appeal of: Borough of Pleasant Hills.

Commonwealth Court of Pennsylvania.

Argued May 9, 2006.
Decided June 26, 2006.
Publication Ordered Sept. 12, 2006.

Fred C. Jug, Jr., Pittsburgh, for appellant.

Ronald P. Koerner, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

The Borough of Pleasant Hills (Borough) asks this Court to review an order of the Court of Common Pleas of Allegheny County (trial court) that reversed a decision of Borough Council denying disability pension benefits to the Borough's chief of

police, Floyd Nevling. Concluding the trial court exceeded its standard of review, we reverse.

In 1963, Nevling began his law enforcement career with the Allegheny County Police Department. He continued to work for Allegheny County until 1992. At that time, he started his second career when the Borough hired him as its chief of police.

Approximately 10 years later, while he was still working for the Borough at the age of 68, Nevling began experiencing noticeable hearing loss. Shortly thereafter, Nevling filed a claim for disability pension benefits under the Borough's Pension Plan (Plan), asserting his repeated occupational exposure to gunfire, sirens and loud radio communications caused his hearing loss.

Upon receipt of Nevling's claim, the Borough requested a medical examination by Dr. Sidney Busis (Borough's Physician). Following his physical examination, Borough's Physician reported Nevling suffers from asymmetric, bilateral hearing loss. Significant for present purposes, the hearing loss includes a material conductive component on the right side.[1] Noting that conductive hearing loss is not caused by noise exposure, Borough's Physician opined Nevling's occupational exposure to noise did not cause his hearing loss. To the contrary, Borough's Physician indicated age and heredity more likely caused Nevling's hearing loss.

Based on this report, the Plan Administrator denied Nevling's disability claim concluding he was not "disabled" as defined by the Plan.[2] Nevling appealed to Borough Council. At the hearing before Borough Council, the Borough submitted the Plan Administrator's determination, containing Borough's Physician's report, without objection.

In opposition, Nevling submitted medical reports from Dr. Joseph Turner and from Dr. Stephen Wawrose. Both doctors opined Nevling's occupational noise exposure as a police officer, including exposure to gunfire, caused his hearing loss.

Crediting Borough's Physician's report over Nevling's medical evidence, Borough Council voted to deny disability pension benefits to Nevling. Nevling appealed to the trial court.

Before the trial court, the parties stipulated a full and complete record was made before Borough Council. The trial court did not accept additional evidence.

Nevertheless, following its review, the trial court made its own determinations concerning credibility and evidentiary weight. Of particular relevance here, the trial court stated, "I ... discredit the report of [Borough's Physician] and find it[,] to not be substantial evidence that can support the actions of the Borough Council." Tr. Ct., Slip Op. at 11. The trial court further stated, "I find the medical

1. Conductive hearing loss occurs when sound is not processed efficiently through the outer ear canal to the eardrum and the middle ear. Examples of conditions that may cause conductive hearing loss include, impacted ear wax, the presence of a foreign body in the ear or conditions associated with middle ear pathology such as fluid in the ear, ear infections, and benign tumors. The American Speech–Language Hearing Association, *available at* http://www.asha.org/public/hearing/disorders/types.htm.

2. Section 1.07 of the Plan defines the term "disabled" or "disability," in relevant part, as "a permanent condition of physical or mental impairment due to which a police officer is unable to perform the usual and customary duties of a police officer.... *A Member whose physical or mental impairment does not occur in the line of employment is not entitled to receive disability benefits under the Plan.*" Reproduced Record (R.R.) at 180a (emphasis added).

reports from Dr. Turner and Dr. Wawrose most persuasive to support Nevling's claim for disability benefits." Id. Thus, the trial court concluded, "the evidence in this matter clearly and unequivocally establishes that [Nevling] qualifies for a disability [pension] benefit [under] the Plan." Tr. Ct., Slip Op. at 13. This appeal followed.

■ On appeal, the Borough argues the trial court exceeded its standard of review by making its own credibility determinations and reweighing the evidence presented to Borough Council. As Borough Council developed a full and complete record, the Borough maintains, the trial court was limited to determining whether constitutional rights were violated, an error of law was committed or necessary findings were supported by substantial evidence. We agree.

■ When considering an appeal from a local agency, a court's standard of review is determined by the condition of the record created before that local agency. *In re Thompson*, 896 A.2d 659 (Pa.Cmwlth. 2005). In the event the proceedings before the local agency fail to establish a full and complete record, the court of common pleas may hear the appeal *de novo*, or may remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court. Section 754(a) of the Local Agency Law (Law), 2 Pa.C.S. § 754(a).

Where a full and complete record is made before the local agency, however, a reviewing court shall hear the appeal on the record supplied, and shall affirm the local agency's adjudication unless it violates constitutional rights, the local agency committed an error of law, the decision violates the provisions of the Law, or necessary findings of fact are not supported by substantial evidence. Section 754(b) of the Law, 2 Pa.C.S. § 754(b). *See Thomp-*

*son; SSEN, Inc. v. Borough Council of Borough of Eddystone,* 810 A.2d 200 (Pa. Cmwlth.2002) (*en banc* ).

Here, it is undisputed a full and complete record was made before Borough Council. R.R. at 242a, Stipulation No. 8. Indeed, the parties stipulated to the existence of a complete record. Moreover, the trial court considered the record complete as evidenced by its decision not to accept additional evidence and to resolve the matter based on Borough Council's record. Under these circumstances, the proper standard of review is set forth in Section 754(b) of the Law.

■ Pursuant to Section 754(b), a reviewing court may look only to the evidence relied on by the fact-finder, here Borough Council. *Thompson; SSEN, Inc.* "Nowhere in Section 754 is the reviewing court given general authority to make its own findings of fact and conclusions of law when the local agency has developed a full and complete record...." *Thompson,* 896 A.2d at 668; *see also Society Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of City of Phila.,* 804 A.2d 147, 150 (Pa.Cmwlth.2002), *pet. for allowance of appeal granted in part,* 583 Pa. 513, 880 A.2d 504 (2005).

■ A reviewing court, such as the trial court here, must accept the credibility determinations made by the local agency which hears the testimony, evaluates the credibility of the witnesses and serves as fact-finder. *Hinkle v. City of Phila.,* 881 A.2d 22 (Pa.Cmwlth.2005). The reviewing court is not to substitute its judgment for that of the local agency. *Thompson.* Assuming the record demonstrates the existence of substantial evidence, the court is bound by the local agency's findings. Id.

Borough Council made considerable factual determinations based on the credibili-

ty and weight of the evidence. More specifically, Borough Council found Borough's Physician's report more credible and persuasive than the medical reports Nevling submitted. Borough Council's Op., Conclusions of Law Nos. 6–8. Because such credibility determinations are within the sole province of Borough Council, the trial court erred in reversing this determination. *Thompson; Hinkle; see also In re Brickstone Realty Corp.*, 789 A.2d 333 (Pa. Cmwlth.2001). Likewise, because all of Borough Council's findings are supported by Borough's Physician's credited report, R.R. 218a–222a, the trial court exceeded its limited standard of review. Section 754(b); *Thompson.*

Furthermore, there is no merit to Nevling's contention that Borough Council's findings lack substantial support because Borough's Physician's report is materially defective. Specifically, Nevling contends Borough's Physician relied on an inaccurate description of Nevling's firearms techniques to conclude occupational noise exposure did not cause his hearing loss, and, thus, Borough's Physician's report is materially defective. Nevling asserts his testimony, as well as the testimony of the Borough's weapons training officer, establishes Borough's Physician's error, and, therefore, his medical opinions are legally insufficient.

Nevling relies on our Supreme Court's decision in *Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Corp.)*, 547 Pa. 639, 692 A.2d 1062 (1997). There, the Court held a medical expert's opinion, which is based *solely* on inaccurate or false information, is legally incompetent to support a determination. In applying *Newcomer*, this Court consistently

states the opinion of a medical expert must be viewed as a whole, and inaccurate information will not render the opinion incompetent unless the opinion is dependant on those inaccuracies. *See Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391 (Pa.Cmwlth. 2001); *Deitrich v. Workmen's Comp. Appeal Bd. (Shamokin Cycle Shop)*, 136 Pa. Cmwlth.557, 584 A.2d 372 (1990).

Here, Nevling's argument fails for two reasons. First, Borough Council rejected the testimony cited by Nevling to prove the information contained in Borough's Physician's report is inaccurate or false. As a result, Borough Council did not make any findings concerning Nevling's firearms techniques. In fact, Borough Council expressly rejected Nevling's testimony where it conflicted with the information provided to Borough's Physician. Borough Council Op., Finding of Fact (F.F.) No. 17(d). Thus, Borough Council rejected Nevling's testimony regarding his firearms techniques, and accepted the information appearing in Borough's Physician's report. Accordingly, Nevling failed to prove the factual predicate on which he bases his claim of material defect.

Second, Borough's Physician's also relied on the conductive component of Nevling's medical condition to conclude occupational noise exposure did not cause his hearing loss. F.F. Nos. 17(g), (j)-($l$). As a result, Borough's Physician's opinion was not based solely on Nevling's firing techniques. Under *Newcomer*, therefore, any alleged error in that portion of his report is insufficient to render his opinion legally incompetent.[3]

Accordingly, we reverse.[4]

---

**3.** Because we conclude the trial court exceeded its standard of review, we need not determine whether the trial court also erred in concluding Nevling was "disabled" or wheth-

er Nevling preserved objections to the Plan Administrator's testimony.

**4.** In his brief to this Court, Nevling argues Borough Council erred: in determining his

## ORDER

AND NOW, this 26th day of June, 2006, the order of the Court of Common Pleas of Allegheny County is hereby **REVERSED.**

occupational noise exposure did not cause his hearing loss; capriciously disregarding the opinions of his medical experts; and, improperly considering the Plan Administrator's testimony concerning local firing ranges. All three arguments lack merit.

First, Nevling vigorously maintains his occupational noise exposure to gunfire during firearms training and recertification procedures caused his hearing loss, and, therefore, Borough Council erred in concluding he was not "disabled" under the Plan. Despite Nevling's repeated contentions, Borough Council accepted Borough's Physician's opinion that Nevling's hearing loss was not caused by noise exposure. Because Borough Council, as fact-finder, possesses exclusive province over matters of credibility, Nevling's claims of occupational noise exposure cannot override Borough Council's credibility determinations. *Hinkle.*

Second, Nevling contends Borough Council capriciously disregarded the opinions of his medical experts. Here, however, Borough Council's decision plainly demonstrates it did not deliberately ignore the reports of Nevling's medical experts, as evidenced by its five findings of fact. F.F. 19–24. Rather, Borough Council considered their opinions, yet chose to reject them. As the express consideration and rejection of evidence does not constitute capricious disregard of evidence, Nevling's argument fails. *See Christopher v. Workers' Comp. Appeal Bd. (Consolidation Coal Co.)*, 793 A.2d 991 (Pa.Cmwlth.2002).

Finally, Nevling maintains Borough Council improperly considered the Plan Administrator's testimony concerning the noise level and possible accommodations available at various area firing ranges because she did not include these considerations in her initial denial of Nevling's claim. Any alleged error in the acceptance of this testimony, however, is harmless because Borough Council concluded Nevling's hearing loss was not caused by occupational noise exposure. *See Universal AM–CAN, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 870 A.2d 961 (Pa.Cmwlth.2005) (error that does not alter the resolution of the matter is harmless).